IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL McNEIL,<br>Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>Defendant. | CIVIL NO. 12-5718 |

## MEMORANDUM OPINION & ORDER

**RUFE, J.**                                                                          **August 6, 2013**

Plaintiff Carl McNeil brings this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration, Carolyn W. Colvin ("Commissioner"), which denied his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. Specifically, Plaintiff requests that the Court remand the case for reward of benefits, or, in the alternative, remand for *de novo* administrative adjudication. Defendant argues that the administrative law judge's determination was supported by substantial evidence and should be upheld. This Court referred the matter to Magistrate Judge Linda Caracappa for a Report and Recommendation ("R & R").[1] In an R & R submitted on May 30, 2013, Magistrate Judge Caracappa recommended that the Court remand the case for further review. Defendant timely objected, and the matter is now ready for decision. For the reasons that follow, and after careful review of the entire record, the parties' submissions, and the applicable law, the Court will approve and adopt the R & R in substantial part and remand the case for further adjudication.

---

[1] See Local Rule of Civil Procedure 72.1.I(a); 28 U.S.C. § 636(b)(1)(B).

## I. FACTUAL AND PROCEDURAL HISTORY

The Court adopts and approves the factual and procedural history set forth in the R & R, and will not recount it herein except as necessary to advance the discussion.

Plaintiff first sought treatment for psychiatric symptoms in November 2009. At that time, he was evaluated by psychiatrist George H. N. Adams, M.D., and diagnosed with major depression with psychotic features. Dr. Adam's November 20, 2009 evaluation notes that Plaintiff suffers from cycling depression, panic, insomnia, anxiety, and episodic hallucinations. At the time of the evaluation, Plaintiff's Global Assessment of Functioning ("GAF") was 35, which, the ALJ noted, indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood . . . ."[2] He was prescribed antidepressant medication and began outpatient therapy. In December 2009, his treatment team noted that his mood was unstable and his psychiatrist added a second antidepressant, as well as Abilify, an antipsychotic.[3]

In a medical source statement prepared on January 19, 2010, Plaintiff's treatment providers[4] opined that he had seriously impaired, poor, or no ability to remember work-like procedures, understand or carry out very short, simple instructions, maintain attention and

---

[2] R. at 27.

[3] The R & R remarks that Plaintiff's treatment was "relatively conservative." The Court disagrees with this characterization, as the psychiatry and pharmacy records indicate that Plaintiff was taking two antidepressant medications, one antipsychotic medication, and one medication for anxiety, and receiving monthly medication checks and therapy. Despite this treatment, he required a six-day hospitalization for severe depression with psychosis and suicidal ideation in May 2010, and continued to be symptomatic after discharge.

[4] It appears that this statement was prepared by his therapist, Jim Kleidan, M.A., and approved by his psychiatrist Dr. Adams as consistent with Dr. Adam's November 20, 2009 evaluation.

2

concentration for extended periods, maintain regular attendance and arrive punctually at work, sustain an ordinary routine without special supervision, work in proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, set realistic goals independently, ask questions and accept instructions, respond appropriately to criticism, and perform at a consistent pace.[5] The medical source statement also indicated that Plaintiff had only fair ability to interact appropriately with the public, get along with co-workers, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness.[6]

In late April and early May 2010, Plaintiff had an episode of decompensation, involving hallucinations, suicidal ideation, and suicidal efforts, and on May 4, 2010, he reported to an emergency room in crisis and was admitted to an inpatient mental health unit.[7] At that time, a mental status examination was performed.[8] That evaluation noted that Plaintiff's GAF was 20, his thought process was disturbed and marked by poor reality testing, poor insight and judgment, and decreased concentration, his mood and affect were depressed, he was experiencing hallucinations, and he had suicidal ideation.[9] After six days, Plaintiff was discharged to outpatient treatment but continued to experience depression and auditory hallucinations.

---

[5] R. at 549-50.

[6] Id.

[7] R. at 652-54.

[8] R. at 649-51.

[9] R. at 650.

3

## II. STANDARD OF REVIEW

A court reviewing a Social Security case must base its decision on the record of the administrative proceedings and the pleadings of the parties.[10] The court's review of legal issues is plenary, but its factual review is limited.[11] The court must determine whether the record contains substantial evidence to support the administrative law judge's ("ALJ") factual findings, and whether the Commissioner applied the proper legal standards in making its decision.[12] For these purposes, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] It is more than a mere scintilla, but requires less than a preponderance of the evidence.[14] If the ALJ's factual findings were determined according to the correct legal standards and are supported by substantial evidence, the court is bound by them, "even if [it] would have decided the factual inquiry differently."[15]

A district court must review *de novo* those portions of a magistrate judge's R & R to which a party has objected.[16] A court may in its discretion "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[17]

---

[10] 42 U.S.C. § 405(g).

[11] Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

[12] See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

[13] Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995).

[14] Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

[15] Fargnoli, 247 F.3d at 38.

[16] 28 U.S.C. § 636(b)(1)(c).

[17] Id.

4

## III. DISCUSSION

### A. Determining Disability

In order to qualify for SSI benefits, a person must be found to have a "disability." Under the relevant provisions of the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[18] An ALJ reviewing an application for disability benefits must employ the five-step process established in the Social Security Regulations ("the Regulations") to determine whether a disability exists.[19] At step one, the ALJ must determine whether the applicant is engaged in "substantial gainful activity"; if he is, the claim is denied. If the applicant is not engaged in substantial gainful activity, the ALJ must determine at step two whether the applicant suffers from a severe, medically determinable impairment which significantly limits his ability to work. If the applicant has such an impairment, the ALJ must determine at step three whether the impairment found meets the criteria for any of the impairments conclusively presumed to be disabilities, which are listed in Part 404, Subpart P, Appendix 1 ("the Listings"),[20] or has an equivalently debilitating medical condition. If the claimant's condition meets or equals a listing, he is found disabled at step three and the ALJ need not reach steps four and five.

---

[18] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). "Disability" is defined identically in Title II and Title XVI of the Social Security Act, governing DIB and SSI benefits, respectively. Id.; see also Barnhart v. Thomas, 540 U.S. 20, 23-24 (2003).

[19] Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

[20] See 20 C.F.R. §§ 404.1520(d), 416.920(d).

5

If the applicant has a severe impairment that does not meet or equal an impairment in the Listings, the ALJ must determine at step four whether the applicant has the Residual Functioning Capacity ("RFC") to perform his prior relevant work. If the applicant does not have the RFC to perform her previous work, the Commissioner must establish at step five that the applicant has the RFC to perform other work that exists in the national economy, considering her age, education and work experience. At this fifth step, if the Commissioner cannot demonstrate that the applicant has the RFC to perform other existing work, the ALJ must find that the applicant is disabled.

## B.     The Hearing and the ALJ's Decision

On August 24, 2010, ALJ Richard A. Kelly denied Plaintiff's disability claim. In making his decision, the ALJ considered documentary evidence, testimony from Plaintiff, Plaintiff's sister, an independent vocational expert ("VE"), an impartial medical expert, Donald I. Goldman, M.D. (an orthopedic surgeon), and testimony from a second independent vocational expert who had testified before ALJ Owen Katzman at a prior hearing regarding this claim for benefits.[21]

After hearing testimony and reviewing the record evidence, the ALJ applied the five-step process as required by the Social Security Administration regulations. At steps one through three he found, in relevant part: (1) Plaintiff had not engaged in substantial gainful activity since June 13, 2008, the application date; (2) Plaintiff suffered from the following severe impairments:[22]

---

[21] As noted in the R & R, after holding a hearing at which Plaintiff, his sister, and a VE testified, ALJ Katzman determined that a medical expert was needed. Therefore, a second hearing was held before ALJ Kelly. The record does not indicate why ALJ Katzman did not conduct the second hearing.

[22] While the ALJ found that Plaintiff's diagnosis with Hepatitis C virus was not severe and caused no functional limitations, the Court believes the infectious nature of this medical condition might preclude certain types of employment. On remand the ALJ should explore this possibility. Minichino v. Colvin, No. 12-625, 2013 WL 3287142 (M.D. Pa. June 28, 2013).

cervical degenerative disc disease, asthma, hearing loss, major depressive order, and a history of polysubstance abuse;[23] and (3) neither Plaintiff's physical impairments nor his psychiatric impairments met or equaled any impairments found in the Listings. The parties have not contested the ALJ's determinations at steps one, two, and three.

Before determining Plaintiff's ability to perform past relevant work or other jobs available in the economy at steps four and five, the ALJ assessed his functional limitations. The ALJ found Plaintiff had the residual functional capacity to perform light work, but not the full range of light work. He was further limited by his inability to stand/walk or sit for more than six hours during an eight hour work day because of his physical conditions, and by his need for simple, routine one- to two- step work activities because of his mental illness.[24] At step four, the ALJ found that Plaintiff was able to perform his past relevant work as a packer (an unskilled, light position as performed in Plaintiff's workplace), despite his functional limitations. In the alternative, the ALJ found at step five that Plaintiff had the RFC to perform unskilled light work involving simple, routine, one- to two- step instructions, and such jobs exist in significant numbers both in the national economy and locally.[25] As a result, the ALJ found that Plaintiff was

---

[23] It is not clear why the ALJ included the history of polysubstance abuse in the list of severe impairments, as the ALJ made no specific findings with regard to how the history of polysubstance abuse "significantly limit[ed] [claimant's] physical or mental ability to do basic work activities" during the relevant time period. The only indication of recent drug abuse in the record indicates that Plaintiff relapsed after three years of sobriety and used cocaine during the two to three weeks immediately prior to his psychiatric hospitalization in early May 2010. R. at 649- 57. There is no evidence indicating that drug use was ongoing or that any of his mental health symptoms stemmed from past or current drug abuse. Plaintiff also testified that it had been his habit to consume one- to two- beers on the weekends, but that he was drinking even less than that recently because of his hepatitis diagnosis. Again, there was no contradictory evidence on the record.

[24] R. at 28.

[25] R. at 29-30.

7

not disabled as defined by the Social Security Act.[26]

C. **Assessment of Plaintiff's Functional Limitations Related to Mental Illness**

Plaintiff filed this appeal, challenging the ALJ's rulings at steps four and five of the five-step process, arguing that the ALJ failed to account for all the functional limitations associated with his mental health condition. The primary evidence supporting Plaintiff's claimed functional limitations was the medical source statement from Plaintiff's mental health services provider, and the ALJ did not fully credit that statement. The R & R found substantial evidence supported the ALJ's decision to not fully credit the medical source statement. Although neither party objected to the R & R's finding on this issue, after independent review of the record, and for the reasons below, this Court finds that the ALJ's determination that the medical source statement was not fully credible is *not* supported by substantial evidence.

Regulations and case law generally require the ALJ to give enhanced weight to the findings and opinions of treating professionals.[27] However, here, the ALJ discredited many of the functional limitations identified by Plaintiff's treating professionals. In so doing, he relied upon Plaintiff's parole evaluation dated November 13, 2003, which indicated an Axis I diagnosis of cannabis abuse, cocaine abuse and opioid abuse, by history, no Axis II diagnosis, no more than slight impairments in social, occupational, or educational functioning, and a GAF of 75.[28] Despite the fact that this evaluation was done in the parole context, as opposed to the treatment context, and was performed approximately *six years* before Plaintiff sought treatment for

---

[26] R. at 30.

[27] 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927; Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993); Frankenfield v. Bowen, 861 F. 2d 405, 408 (3d Cir. 1988).

[28] R. at 586.

depression with psychotic features, the ALJ wrote: "As can be clearly noted this [2003 evaluation] is an entirely different picture that [sic] the one to be seen in the notes of the present mental health provider, and makes the more recent treatment notes questionable at best."[29] The Court finds the ALJ erred, as a matter of law, in discrediting the opinion of the current mental health provider simply because the claimant was asymptomatic when his mental health was evaluated for his parole review, six years before he first sought treatment for mental illness.

The ALJ also explained that he did not fully credit the medical source statement because it was unsupported by objective findings in the record.[30] Upon review, Magistrate Judge Caracappa found that the ALJ's conclusion was supported by substantial evidence, opining that the November 20, 2009 evaluation "does not paint nearly as severe a picture as the subsequent medical source statement that relies upon this evaluation to support the findings."[31] This Court disagrees. The medical source statement is fully consistent with the November 20, 2009 evaluation, which indicated that Plaintiff appeared distressed, depressed, and dysthymic and experienced periodic psychotic features and which assigned a GAF score of 35. The medical source statement is also consistent with Plaintiff's subsequent treatment records, and as it was produced by Plainitff's ongoing treatment providers, it should have been given enhanced weight.

In addition to only partially crediting the medical source statement, the ALJ also stated that he would not fully credit Plaintiff's testimony regarding his mental health symptoms. He

---

[29] R. at 26; see also R. at 27-28.

[30] R. at 28.

[31] R & R at 43.

9

reasoned that it was "unclear how much of the claimant's mental health issues are unrelated to substance abuse."[32] However, the ALJ did not cite any evidence indicating that Plaintiff was currently using drugs, or any evidence or expert medical opinion suggesting that past or current drug abuse could cause similar symptoms and functional limitations to those Plaintiff contended were caused by depression with psychotic features.[33] Therefore, the ALJ's rejection of Plaintiff's testimony was not supported by substantial evidence in the case record.[34] Moreover, the ALJ improperly substituted his layperson's medical opinion in the absence of any medical evidence or expert opinion suggesting that Plaintiff's symptoms and limitations could be the result of substance abuse.

The Court, therefore, will remand for a reassessment of Plaintiff's mental health-related functional limitations.

### D. Assessment of Plaintiff's Ability to Work

The ALJ posed a hypothetical to the VE which included many of the mental limitations from the medical source statement, asking:

> [Y]ou've got an individual that basically has poor capabilities per this medical source statement, and most everything–can't perform at a consistent pace, can't make simple decisions, he can't–basically get there on public transportation. Most significantly, he can't work independently. With all those, and I only gave you some that are in there and what appears to be some significant social isolations, as is mentioned throughout the notes, would any job be maintainable?[35]

---

[32] R. at 28.

[33] See note 24, supra.

[34] Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981) ("the ALJ cannot reject evidence for no reason or for the wrong reason").

[35] R. at 77-78.

10

The VE testified that those limitations would preclude anyone from working in any job.[36]

However, at steps four and five, the ALJ *did not* credit all of the functional limitations included in that hypothetical. As noted above, with regard to mental health limitations, the ALJ only considered Plaintiff's need for simple, routine one- to two- step work activities when analyzing whether Plaintiff could engage in past, relevant work or other work available in the national economy.

    a.    <u>Past Relevant Work</u>

Plaintiff identified three jobs he had held within fifteen years of his application for benefits: 1) nursing assistant at the Veteran's Administration Hospital; 2) machinist (slicer) and packer of frozen meat for Philadelphia Cheesesteak Company;[37] and 3) machinist, cutting rubber floor mats for Global Rubber. The VE testified that, as described by Plaintiff, only Plaintiff's job with the Philadelphia Cheesesteak Company could be classified as unskilled light work.[38]

Without posing a hypothetical to the VE that contained all of the physical and mental functional limitations he found credible, the ALJ found that Plaintiff could engage in hand packing, one portion of his prior relevant job at the Philadelphia Cheesesteak Company, despite

---

[36] R. at 78; see also R. at 111.

[37] In his brief in support of request for review, Plaintiff argued that his work for the Philadelphia Cheesesteak Company does not qualify as "relevant" work because his earnings in that position did not reach the level of "substantial gainful employment." The Court agrees with the Magistrate Judge's conclusion that Plaintiff's work for the Philadelphia Cheesesteak Company constituted substantial work activity, and therefore it can be considered past relevant work. Plaintiff did not file objections to the R & R.

[38] At the earlier hearing before ALJ Katzman, a different VE testified that all of Plaintiff's past relevant positions involved at least medium exertion. R. at 107-108. At the hearing before the ALJ, the VE testified that, *as performed*, according to Plaintiff's testimony, the machinist and hand packer work Plaintiff performed for the Philadelphia Cheesesteak Company was light unskilled work, whereas the machinist work he performed for Global Rubber was light semiskilled work, and his work as a nursing assistant was at least medium and possibly heavy. R. at 76-77.

11

his functional limitations, and concluded that Plaintiff was not disabled at step four of the disability analysis. As the R & R discusses in detail, the ALJ's conclusion that Plaintiff could perform his prior work is not supported by substantial evidence. First, as the R & R explains, Plaintiff did not engage in past relevant work as a "hand packer."[39] Packing sliced meat was one task Plaintiff performed as part of his duties for the Philadelphia Cheesesteak Company; he was not employed as a packer. Second, the R & R found, per the Directory of Occupational Titles ("DOT") 920.587-018, that even that single task requires the ability to carry out "detailed but uninvolved written or oral instructions," whereas the ALJ found that Plaintiff could only carry out "simple one- or two- step instructions." In other words, the ALJ found that, due to his mental illness, Plaintiff could only perform a *subset* of unskilled light work identified by the DOT as jobs requiring "level one" reasoning, and his work as a packer required more advanced "level two" reasoning. The R & R concluded that the ALJ did not properly assess whether Plaintiff's need for jobs requiring only simple one- or two-step instructions foreclosed his ability to engage in hand packing.[40] For these reasons, the R & R recommends remand: 1) for proper classification of past relevant work; 2) to consider the skills required for Plaintiff's past relevant work, including the reasoning development skills required; 3) to elaborate on the meaning of the limitation included the residual functional capacity assessment; and 4) to reassess whether Plaintiff is able to engage in past relevant work.[41] The Court concurs, and adds the predicate need to reassess the functional limitations posed by Plaintiff's mental illness.

---

[39] R & R at 26.

[40] R & R at 29-30.

[41] R & R at 30-31.

b. Other Jobs in the National Economy

At step five of the disability analysis, the ALJ also found Plaintiff was able to perform other jobs in the national economy. However, he did not do so based upon a hypothetical posed to a VE that included all of the functional limitations he found to be credibly established. In fact, ALJ Kelly did not pose any hypothetical to the VE asking her to identify jobs available in the national economy, but rather relied on testimony from ALJ Katzman's first hearing at step five. However, neither ALJ asked the testifying VE to identify jobs which could be performed by an individual who was limited to light jobs requiring simple one- or two- step instructions. Therefore, at the first hearing, the VE identified unskilled light jobs (dental floss packer, hand packer, and hand bander) without considering a level one reasoning limitation. Because one of the positions identified, that of hand bander, is a light unskilled position requiring only level one reasoning, Defendant argues, in both the response brief and objections to the R & R, that the ALJ's ruling should be affirmed despite the inadequate hypothetical questions posed to the VEs. The Court disagrees, for the reasons set forth in the R & R.[42]

Moreover, because the Court believes that the ALJ improperly discredited evidence which supports a finding of additional functional limitations related to Plaintiff's mental health without substantial evidentiary support, the Court also remands so that the ALJ may consider whether Plaintiff has credibly established other functional limitations.[43] Any hypothetical posed to the VE on remand should include *all* credibly established functional limitations.

IV. CONCLUSION

---

[42] R & R at 36-38.

[43] As noted above, the Court disagrees with the R & R only insofar as the R & R finds that the ALJ's determination that the medical source statement was not fully credible was supported by substantial evidence.

13

For the reasons outlined above, the Court finds that the ALJ's rulings regarding Plaintiff's functional limitations, his ability to perform past relevant work, and his ability to engage in other jobs available in the national economy are not supported by substantial evidence. An appropriate Order follows.